COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Elder and Senior Judge Overton


CRYSTAL McMILLON
                                        MEMORANDUM OPINION[*]
v.    Record No. 2565-01-3                  PER CURIAM
                                         FEBRUARY 26, 2002
CARROLL COUNTY DEPARTMENT
 OF SOCIAL SERVICES


              FROM THE CIRCUIT COURT OF CARROLL COUNTY
                       Duane E. Mink, Judge

           (Dwight E. Compton; Cooley & Compton, on
           brief), for appellant.

           (Margaret D. Sutton, Counsel for Carroll
           County Department of Social Services; Carolyn
           P. Phillips, Guardian ad litem for the minor
           children, on brief), for appellee.


     Crystal McMillon (mother) appeals the decision of the circuit

court terminating her residual parental rights in her son, Javonte

Marcavial McMillon, and her daughter, Sierra McMillon.  On appeal,

mother contends the trial court erred in:  (1) finding that she

voluntarily signed the entrustment agreements; (2) finding that

the Carroll County Department of Social Services (DSS) made

reasonable efforts to communicate with her to strengthen the

parent-child relationship and to reach the foster care service

plan of returning the children to their home; and (3) ordering the

involuntary termination of her parental rights to the children.

─────────────────

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

On appeal, we view the evidence and all the reasonable inferences in the light most favorable to appellee as the party prevailing below. McGuire v. McGuire, 10 Va. App. 248, 250, 391 S.E.2d 344, 346 (1990).

### Background

Javonte was born on August 3, 1994, and Sierra was born on November 10, 1997. DSS received a telephone call that mother was residing with the children in a trailer that had no electricity or heat. Two social workers went to mother's residence, and mother represented to the social workers that she had no plan for housing for herself or the children. On April 10, 2000, mother signed agreements entrusting the children to the custody and care of DSS until she could find employment and a residence.

On May 16, 2000, DSS filed a foster care service plan with the goal of "return home" and a target date for achieving that goal of November 2000. Under this plan, mother was required to maintain housing, employment, and transportation for ninety days before reunification of the family could begin. Mother was also supposed to visit the children twice a month. The plan stated that DSS would provide mother transportation to job interviews, provide her information on available job employment, provide her transportation to search for housing, and schedule visitation with

-

the children two times per month.  DSS also suggested that mother obtain counseling and attend parenting classes to assist her in meeting her parental responsibilities.  Mother never accepted help and did not respond to any of the suggestions from DSS.

On June 22, 2000, the juvenile and domestic relations district court (J&DR court) approved the entrustment agreements, and mother signed a waiver of rights to be represented by a lawyer.

Mother visited the children eight times from April 2000 until July 13, 2000.  Between July 2000 and the date of the termination hearing on August 23, 2001, mother visited the children once on December 20, 2000.  She never complained to DSS about the visitation and was never denied visitation with the children.

On or about August 11, 2000, an employee of DSS learned from reading the newspaper that mother had been arrested for drug and firearm violations and she was in jail.  On September 14, 2000, after her release from jail, mother called DSS regarding visitation.  Barbara Baxley, a social worker, requested that mother visit the DSS office to discuss the reasons for her imprisonment and to establish a visitation schedule.  Baxley did not hear from mother again until she visited the children in December 2000.  Indeed, DSS was unable to locate mother for a period of time.

On October 20, 2000, after mother had failed to complete the requirements of the foster care service plan, DSS filed a foster

care service plan with a change in the program goal to adoption. DSS also sought to terminate mother's parental rights, and the J&DR court explained to mother the process for termination of residual parental rights and the consequences of its approval of changing the plan's goal to adoption. On July 31, 2001, the J&DR court approved the plan and terminated mother's parental rights. Mother appealed to the circuit court. On August 23, 2001, the trial court also approved the plan and terminated mother's parental rights. The trial court found that, pursuant to Code § 16.1-283(C), mother had failed to maintain continuing contact with the children and to provide or substantially plan for the future of the children for six months after their placement in foster care notwithstanding the reasonable efforts of DSS to communicate with her and strengthen the parent-child relationship.

At the August 23, 2001 hearing, mother, who does not have a driver's license, testified that DSS had done little to assist in her rehabilitation and did not offer her any services or assist in her transportation needs. She stated that DSS treated her like "trash" and refused her efforts to schedule visits with the children. Mother indicated she visited the DSS office as often as she could. Mother also stated that DSS "tricked" her into signing the entrustment documents. Mother indicated she was currently employed at a temporary services agency and lived in a rental house located near a taxi stand and a school. Mother stated she had enrolled in a Welfare to Work program, she had enrolled one

-

child in a Head Start program, and she had attempted to enroll the other child in elementary school.

Carolyn Phillips, the guardian ad litem for the children, testified that her primary concerns were the lack of stability on mother's part and the lack of contact between mother and the children for one year. She recommended termination of mother's residual parental rights.

### Analysis

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990). On appeal, we presume that the trial court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Id. at 329, 387 S.E.2d at 796. Furthermore, "[w]here, as here, the trial court heard the evidence ore tenus, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986).

-

The evidence showed that mother has substantially failed to maintain continuing contact with the children and to provide or substantially plan for the future of the children for a period of six months after their placement in foster care, notwithstanding the efforts of DSS. Although mother testified that DSS did not offer her assistance, the trial court accepted the testimony of the DSS employees who stated that mother refused their offers of assistance, did not attend parenting classes, and failed to respond to any of their suggestions. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). Thus, although DSS informed mother of her obligations under the foster care plan, she failed to complete any of her obligations, despite the passage of over one year since the children were placed in foster care. "The Department is not required 'to force its services upon an unwilling or disinterested parent.'" Logan, 13 Va. App. at 130, 409 S.E.2d at 463-64. In addition, mother had visited the children only one time in the past eight months. Moreover, the children were in foster care for more than one year, and "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities."

-

Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

In addition, the record does not indicate mother argued to the trial court that she involuntarily signed the entrustment agreements. The written statement of facts contains only the testimony of the witnesses and does not contain any arguments presented by the parties. "The burden is upon the appellant to provide us with a record which substantiates the claim of error. In the absence thereof, we will not consider the point." Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1185, 409 S.E.2d 16, 20 (1991). Where we do not have the benefit of a transcript of the proceedings, we can consider only that which is contained in the written statement signed by the trial judge. Id. Furthermore, although mother testified DSS "tricked" her into signing the entrustment documents, the trial court did not accept her testimony.

Finally, although mother maintains that she has remedied the situation that led to the children's foster care, "'past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" Linkous v. Kingery, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (citation omitted). Therefore, the record supports the trial court's finding that DSS presented clear and convincing evidence satisfying the statutory requirements of Code § 16.1-283(C)(1) and establishing that termination of mother's residual parental rights

-

is in the children's best interests.  Accordingly, the decision of the trial court is affirmed.

<u>Affirmed.</u>
