**Alexandria**
VIRGINIA ANN JENKINS
v.
WINCHESTER DEPARTMENT OF
SOCIAL SERVICES
No. 1909-90-4
Decided August 27, 1991

COUNSEL

Jesse J. Richardson, Jr. (Hazel & Thomas, P.C., on briefs), for appellant.

Jeffery R. Patton (Thomas A. Louthan, P.C., on briefs), for appellee.

OPINION

DUFF, J.—In this consolidated appeal, Virginia Ann Jenkins (Ms. Jenkins) challenges two final judgments of the Circuit Court of the City of Winchester. By order entered August 1, 1990, the court terminated Ms. Jenkins' residual parental rights to her son, Jody Ray Jenkins, born November 26, 1987. By order entered August 9, 1990, the court found Ms. Jenkins' daughter, Rachel Ann Jenkins, born October 2, 1989, to be an "abused and neglected" child as defined in Code § 16.1-228(1) and (5). This latter order continued the care, custody and control of Rachel Ann with the Winchester Department of Social Services (Department), but did not terminate parental rights. The two cases were tried together and the record contains the evidence applicable to both cases. It does not contain a transcript of the testimony of the witnesses, but a "Written Statement" containing a detailed recital of the testimony presented was entered by the trial judge. This statement comprises our only source of information regarding the proceeding at trial.

Ms. Jenkins raises the following issues: (1) whether in the case of Rachel Ann, the court erred in making a finding of neglect and abuse where uncontradicted evidence established that the child had not been harmed and had not been removed by Ms. Jenkins from the hospital at birth; (2) whether in the case of Jody Ray, the court erred in terminating residual parental rights where uncontradicted evidence showed vast psychological improvement on the part of Ms. Jenkins since the child was removed from her custody; and (3) whether in the case of both children, the trial court

erred in admitting hearsay evidence over the objection of the guardian *ad litem* for the mother and in admitting testimony relating to the termination of Ms. Jenkins' parental rights as to her three prior children. We affirm the judgment of the trial court in each case.

Under familiar principles, we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department. *Martin v. Pittsylvania County Dep't of Social Servs.*, 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986). When so viewed, the record reveals the following pertinent facts.

## I. THE FACTS

Rachel Ann Jenkins was born on October 2, 1989 at the Winchester Medical Center. On October 3, 1989, based upon its prior experience with the mother, the Department filed a petition with the court alleging that the child was abused or neglected as defined in Code § 16.1-228(1) and (5), and requested that custody be granted to the Department. The Department took custody of Rachel pursuant to an emergency removal order entered October 4, 1989, by the Winchester Juvenile and Domestic Relations District Court.

Ms. Jenkins began receiving services from the Department and other area agencies in December 1977. These included, inter alia, A.D.C., Medicaid, Fuel Assistance, Family Focus, transportation, psychological evaluations, baby-sitters, and parent support groups. Records indicated that several abuse and neglect complaints were found against Ms. Jenkins based on allegations of failure of her children to thrive, malnutrition, lack of food, lack of clothing, lack of shelter, bruising and emotional abuse. Since 1981, the evidence showed the termination of the residual parental rights of Ms. Jenkins to three other children. In 1981, Ms. Jenkins' rights to her second child, John, were terminated after he required hospitalization twice for failure to thrive. In 1986, her rights to her oldest child, Susanna, were terminated after it was determined that the child was significantly delayed in developing mentally and would not thrive in the home environment. In that same year, her rights to her third child, Richard, were also terminated.

At trial, the Department called Dr. John S. Crandell, Ph.D., as an expert in the field of clinical psychology. Dr. Crandell testified that he had completed two evaluations of Ms. Jenkins, one in 1985, and one in 1990. In the first evaluation, he found her to be easily confused and distressed. He diagnosed her as having mild to moderate mental retardation with an I.Q. of 49. She was a paranoid-schizophrenic functioning in the lowest percentile in her group in the administered tests.

In the 1990 evaluation, Dr. Crandell noted "marked stabilization" although she was still easily confused about childrearing. She was no longer suffering from the psychotic thinking exhibited in the 1985 evaluation. However, due to her mental retardation, she would have problems responding to the demands of childrearing. The church and family support systems available to Ms. Jenkins would not be able to provide the intensive, daily supervision she would need to care for her children at minimal levels. He testified that she had reached the maximum of her potential and was still not capable of being an independent parent. He concluded that leaving the children in Ms. Jenkins' care would present a substantial risk of impairment to their bodily and mental functions. Accordingly, in his opinion, the best interests of the children would be served by terminating the parental rights of Ms. Jenkins.

Dr. R. Winston Lutz, the medical director of the Parent-Infant Education Program, had eleven years of association with Ms. Jenkins and her children. He opined that because of her limited abilities, it was impossible for Ms. Jenkins to adequately support, nurture and raise children. He testified that to return Rachel to Ms. Jenkins would be to start the child down "the course that we have seen with both John . . ., who is retarded, spastic, wears braces. . . and Jody. . ., who is also severely developmentally delayed." He believed, based on a reasonable degree of medical probability, that Rachel would be at substantial risk of harm if she were placed in the custody of her mother.

Other evidence established that, despite numerous hour-long parenting sessions, from Rachel's birth until the trial date, Ms. Jenkins was unable to properly hold, diaper or feed Rachel. She could not determine appropriate clothing or even remember Rachel's age. Adele Gabrielick, the case manager responsible for administering the parenting training, testified that Ms. Jenkins

could not, at the time of the trial, care for the children independently. Finally, although various suggestions were made concerning structured parenting situations (e.g., twenty-four hour care facility, family support), such arrangements that did exist were either inadequate or unavailable to Ms. Jenkins.

As regards Jody Ray Jenkins, the record shows that he was initially removed from the care of his mother on February 7, 1988, by the Department due to the placement of Ms. Jenkins in a psychiatric unit. She was released on February 15, 1988, and Jody was returned to her on February 17, 1988.

On March 7, 1988, Ms. Jenkins was again admitted to a psychiatric hospital, and Jody was placed in the care of his aunt, Nina Mudd. Ms. Jenkins was released on April 29, 1988, and on May 2, 1988, Jody was returned to her care pursuant to a court order. However, he failed to sustain any physical or developmental growth after returning home, and was removed on October 3, 1988, due to failure to thrive. He has since been in foster care.

On October 21, 1988, a hearing was held and an order entered finding Jody to be an abused and neglected child. On January 18, 1989, a foster care plan was filed with the court and approved shortly thereafter. The plan called for various responsibilities and commitments on the part of Ms. Jenkins, including counseling at Northwestern Community Services. At an administrative panel review, held September 27, 1989, Ms. Jenkins was unable to state what she had learned through her counseling sessions, nor could she state the needs of Jody or how they could be met. Accordingly, a revised foster care plan was filed with the court on October 30, 1989, with the goal of adoption and the termination of parental rights.

## II. RACHEL

Ms. Jenkins argues that the court erred in making a finding of abuse and neglect in the case involving Rachel because uncontradicted evidence established that the child had not been harmed in any way at the time of her removal from the hospital. Code § 16.1-228(1) and (5) defines "abused or neglected child" as any child:

(1) Whose parent. . . responsible for his care. . . creates a substantial risk of. . . impairment of bodily or mental functions;

* * * *

(5) Who is without parental care. . . caused by the. . . mental. . . incapacity of the child's parent. . . .

From the record before us, the trial judge could have reasonably found that during a period of approximately eleven years involvement with the Department, Ms. Jenkins had not progressed to a point where she was capable of functioning as an independent parent. Prior to the birth of Rachel, she had created, or caused to exist, an environment that presented a substantial risk of impairment to the bodily or mental functions of Rachel if the Department had allowed the child to be subjected to those conditions. Three of appellant's four previous children had suffered such impairment due to her neglect. The evidence clearly supports a finding that the fourth child avoided such impairment only because he was removed at three months of age.

We agree with the Department that the statutory definitions of an abused or neglected child do not require proof of actual harm or impairment having been experienced by the child. The term "substantial risk" speaks *in futuro* and the expert testimony in the record supports a finding that Ms. Jenkins' mental incapacity prevented her from rendering appropriate parental care. No evidence in the record suggests a realistic probability of improvement or alleviation of the conditions which led to the removal initially.

Accordingly, we hold that the Code contemplates intervention in such circumstances by allowing for the emergency removal of children before placement into an environment where "[t]he child would be subjected to an imminent threat to life or health to the extent that severe or irreversible injury would be likely to result if the child were returned to or left in the custody of his parent. . . ." Code § 16.1-251(A)(1). We further disagree with Ms. Jenkins' assertion that the court erred in finding abuse and neglect because of certain alleged deficiencies in the foster care plan which the Department submitted pursuant to Code § 16.1-281. The finding of abuse and neglect was made pursuant to Code § 16.1-279[1] and is in no way affected by the foster care plan re-

---

[1] It appears clear from the foster care plan in the record that the Department concluded that it was not reasonably likely that Rachel could be returned to her family within a practicable period of time. Given this decision, the foster care plan submitted appears to substantially satisfy the statutory requirements.

quirements of Code § 16.1-281.

## III.  JODY RAY

Ms. Jenkins next argues in the case of Jody Ray that the court erred in terminating her residual parental rights because the uncontradicted evidence shows vast psychological improvement on her part since the removal of the child from her custody.

Pursuant to Code § 16.1-283(B), the residual parental rights to a child who has been found by the court to be abused and neglected and placed in foster care may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

(1) The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development, and

(2) It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time.

We find ample credible evidence to satisfy the statutory mandates. Dr. R. Winston Lutz testified that Ms. Jenkins tries very hard, but that her limited abilities make it such that it is impossible for her to adequately support, nurture and raise children. The lack of proper care and nurturing of Jody left him mentally and physically disabled. In the witness's last evaluation in January, 1990, Jody, then twenty-six months of age, was functioning in the range of a twelve to thirteen month old child. He required constant supervision, as well as intensive physical and speech therapy.

Dr. Crandell reported that despite the psychological gains Ms. Jenkins had made, she was not capable of being an independent parent. He concluded that leaving Jody in the care of Ms. Jenkins would present a substantial risk of impairment and that it was in the child's best interests that parental rights be terminated.

We hold that the court gave proper consideration to the fact that the evidence showed some progress on Ms. Jenkins' part. However, when viewed in the light most favorable to the Department, the evidence further showed that she had reached her maxi-

mum potential and still was unable to adequately care for Jody. We find no error in the termination of parental rights as to Jody.

## IV. THE HEARSAY ISSUES

The final two assignments of error are common to both cases. Ms. Jenkins asserts that the court erred in admitting hearsay evidence over her objections. This assertion involved the testimony of Alveretta L. Stiefel, a social worker with the Department, who had signed the petition for termination of parental rights in the case of Jody Ray and the petition for a finding of neglect and abuse in the case of Rachel Ann. Appellant contends that the witness attempted to testify to various items contained in the affidavit which she had executed and attached to the petitions, such items not being within her personal knowledge. However, as we do not have the benefit of a transcript of the proceedings, we can give credence only to what is contained in the Written Statement prepared by the trial judge. That statement records no objection being made to any of the items contained in the affidavit, or to the court's ruling admitting the testimony. The burden is upon the appellant to provide us with a record which substantiates the claim of error. *Speller v. Commonwealth*, 2 Va. App. 437, 440, 345 S.E.2d 542, 545 (1986). In the absence thereof, we will not consider the point.

The Written Statement does record an objection to the admissibility of the "Social Services Report" to the extent that it contained hearsay. The court accepted the report over objection, stating that it would not consider hearsay evidence contained therein. We assume, in the absence of a clear showing to the contrary, that the experienced trial judge followed the conditions attached to the admissibility of the report.

■ Finally, with respect to the hearsay issue, the Written Statement shows an objection to the admissibility of the witness's testimony that on September 25, 1989, Ms. Jenkins reportedly chased her roommate and the roommate's child from the apartment with a butcher knife. However, we cannot determine from the record how the witness learned of this incident or whether it was contained in an official report which the Department was required to maintain. Assuming, but not deciding, that this evidence was inadmissible, we hold its admission to be harmless error in view of the overwhelming expert and other evidence supporting

the court's ultimate holding. In short, error which does not injuriously affect the interest of the party complaining is not reversible. *See Rosenberger v. Commonwealth*, 159 Va. 953, 166 S.E. 464 (1932).

## V. PRIOR TERMINATION OF PARENTAL RIGHTS

██ Finally, Ms. Jenkins asserts that the trial court erred in admitting evidence relating to the termination of her residual parental rights to her three other children. We disagree. Evidence is relevant if it has any logical tendency, however slight, to prove a fact in issue in the case. *Harrell v. Woodson*, 233 Va. 117, 122, 353 S.E.2d 770, 773 (1987). The evidence of the termination of rights as to the other children not only tended to, but did in fact, cast light upon the issue of whether Ms. Jenkins' parenting abilities created a substantial risk of impairment of bodily or mental function.

While this type of evidence was potentially prejudicial, that fact alone is not sufficient to cause its exclusion if it is otherwise relevant. C. Friend, *The Law of Evidence in Virginia* § 136 (3d ed. 1988). Furthermore, we find no support in the record for Ms. Jenkins' claim that undue hostility was raised toward her by the trial court through the introduction of this evidence.

In summary, we conclude that the trial court made a proper finding of abuse and neglect as to Rachel Ann Jenkins, that the evidence supports the court's termination of residual parental rights as to Jody Ray Jenkins, and that we find no reversible error in the hearsay issue presented or in the admission of evidence of the termination of the rights of Ms. Jenkins to her three other children.

Accordingly, the judgments appealed from are

*Affirmed.*

Koontz, C.J., and Baker, J., concurred.