COURT OF APPEALS OF VIRGINIA


Present: Judges Clements, Agee[*] and Felton
Argued at Richmond, Virginia


DAIRAREI TRENDELL BROCKENBROUGH

                                    MEMORANDUM OPINION[**] BY
v.    Record No. 3023-01-2       JUDGE WALTER S. FELTON, JR.
                                         APRIL 22, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Margaret P. Spencer, Judge

            John F. McGarvey for appellant.

            Kathleen B. Martin, Assistant Attorney
            General (Jerry W. Kilgore, Attorney General,
            on brief), for appellee.


     Dairarei Brockenbrough was convicted in a jury trial of

first-degree murder, in violation of Code § 18.2-32.  On appeal he

contends that the trial court erred in (1) allowing the

Commonwealth to impeach its own witness and (2) overruling

Brockenbrough's objection to the Commonwealth's refreshing the

recollection of its witness.  For the following reasons, we

affirm the judgment of the trial court.

_____

     * Justice Agee participated in the hearing and decision of
this case prior to his investiture as a Justice of the Supreme
Court of Virginia.

     ** Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

## I.  BACKGROUND

On October 14, 2000, a vehicle registered to Tracy Richardson was involved in a hit-and-run accident in the Church Hill area of the City of Richmond.  On October 19, Detective Daniel Thaw talked with Richardson about the accident and was informed that Brockenbrough had borrowed the car that day.  Subsequently, Richardson and Detective Thaw attempted to contact Brockenbrough via telephone but neither was successful.

On October 25, 2000, at approximately midnight, Diane Edwards saw a group of men standing near the front of her house.  She recognized several of the men, including Brockenbrough, and asked them to move away from the front of her house.[1]  One of the men in the group "flagged down" Richardson as he drove by.  Richardson stopped, got out of his car and began speaking with Brockenbrough.  Ms. Edwards heard someone say, "You have the nerve to ask me some s*** like this."  She then saw Richardson fall backwards onto the sidewalk and hit his head on the pavement.

After Richardson fell to the ground, Ms. Edwards saw Brockenbrough "kicking and stomping" him around his head and stomach.  Richardson did not move or shield himself from the blows.  Brockenbrough continued to strike Richardson until some of the other men pulled him away.  Richardson died from blunt

---

[1] Edwards knew Brockenbrough because she had braided his hair in the past.

- 2 -

force trauma to the head. His neck was bruised, his larynx was broken, his lips torn, and the bone around his eye was fractured.

Brockenbrough was indicted for first-degree murder, in violation of Code § 18.2-32. At trial, his primary defense was alibi, that he was elsewhere when Richardson was attacked. The police officers testified that Brockenbrough had been inconsistent in relating where he was on the night of Richardson's slaying. In his defense, Brockenbrough called Wendy Baldwin to testify. Baldwin stated that she was friends with Brockenbrough and Amanda Franks. She testified that Brockenbrough left Franks' apartment only when she (Baldwin) took him to his grandmother's to shower. She also stated Brockenbrough did not go to a convenience store near the apartment while he was staying with Franks.[2]

The Commonwealth called Amanda Franks as a rebuttal witness. She testified that Brockenbrough was her boyfriend, but in October 2000 they were only "close friends." She stated that between October 21-28, he did not leave her apartment except to shower at his grandmother's house. Franks stated that because "he was being with other females," they had trust issues. As a result, she said Brockenbrough stayed with her in the apartment, but had no clothes there and would leave only to

---

[2] The convenience store and Franks' apartment are within walking distance of the scene of Richardson's slaying.

- 3 -

go to his grandmother's house to shower.  Her friend Wendy

Baldwin would drive him to his grandmother's house.

During direct examination, Franks stated she was unable to

recall certain statements she had made to police investigators.

When the Commonwealth asked if she recalled talking with the

officers, Brockenbrough objected, stating the Commonwealth was

attempting to impeach its own witness.  The Commonwealth

responded that it was seeking only to refresh the witness'

memory.  The trial court ruled that because Franks had testified

that she could not recall certain statements she had made to the

police, the Commonwealth was permitted to refresh her memory.

To refresh Franks' memory, the Commonwealth sought to use

an audiotape containing a taped conversation with the police.

Brockenbrough objected on the grounds that it was improper to

play the tape in front of the jury to refresh a witness' memory.

The trial court overruled the objection and permitted Franks, in

the presence of the jury, to listen to her taped conversation

with the police.  At the direction of the trial judge, the

contents of the tape were not reported in the transcript by the

court reporter.[3]

Following the playing of the tape, Brockenbrough failed to

move for a mistrial, make a proffer of the tape, or to seek any

---

[3] The transcript recites the following:  "Note:  At this time, the tape is played, not reported by the court reporter per order of the Judge."

other relief from the trial court.  Upon completing the examination of the witness, the Commonwealth attempted to introduce the tape into evidence.  However, the court sustained Brockenbrough's objection to admitting the tape into evidence. Brockenbrough was found guilty of murder.

## II.  IMPEACHMENT OF WITNESS

We first consider whether the trial court erred in allowing the Commonwealth to impeach its own witness.  Brockenbrough contends that the Commonwealth in its examination of Amanda Franks was improperly permitted to impeach its own witness at trial.  We disagree.

A party's ability to impeach a witness it calls is limited by the provisions of Code § 8.01-403.  Code § 8.01-403 provides:

> A party producing a witness shall not be allowed to impeach his credit by general evidence of bad character, but he may, in case the witness shall in the opinion of the court prove adverse, by leave of the court, prove that he has made at other times a statement inconsistent with his present testimony . . . .

On the other hand, refreshing a witness' memory has long been permitted in Virginia.

> Though a witness can testify only to such facts as are within his own knowledge and recollection, yet he is permitted to refresh and assist his memory, by the use of a written instrument, memorandum or entry in a book, and may be compelled to do so if the writing is present in court.  It does not seem to be necessary that the writing should have been made by the witness himself, nor that it should be an original writing,

> provided, after inspecting it, he can speak to the facts from his own recollection. And it is not necessary that the writing thus used to refresh the memory, should itself be admissible in evidence. . . .
>
> The doctrine established by the authorities seems to be that if a witness, after looking at the paper to recall the facts, can speak from his own recollection of them, and not merely because they are stated or referred to in the paper, his evidence will be admissible, notwithstanding the manner in which his recollection was revived, and no matter when or by whom the paper was made, nor whether it be original, a copy, or an extract, nor whether referred to by the witness in court or elsewhere.

Harrison v. Middleton, 52 Va. (11 Gratt.) 527, 544 (1854).

At trial, the Commonwealth called Brockenbrough's girlfriend, Amanda Franks, as a rebuttal witness. After establishing her relationship with Brockenbrough, the Commonwealth asked Franks if she recalled talking with an investigator. Brockenbrough objected that the Commonwealth was impermissibly attempting to impeach its witness. The Commonwealth then told Franks it wanted to refresh her recollection. The trial court ruled that the witness had not testified that she had forgotten anything.

Franks was then asked whether she remembered speaking with Investigator Williams and Detective Burt and making certain statements to them. She testified that she recalled talking with the officers, but did not recall making certain statements to them. When asked whether she remembered telling Investigator

Williams that on several occasions she watched Brockenbrough through her window going to the store, she answered that she did not recall or remember telling him that. The Commonwealth continued, asking her if she recalled telling Detective Burt that she watched Brockenbrough when he went to the store. She stated she recalled talking with Detective Burt, but not telling him she watched Brockenbrough out of her window. After several additional questions, including how often Brockenbrough stayed at her apartment, the Commonwealth requested a tape recorder to play the taped conversation between Franks and Detective Burt. Over Brockenbrough's objection that the Commonwealth was impeaching its witness, the trial court concluded the Commonwealth was not seeking to impeach Franks but was attempting to refresh her memory. The court further held that playing the tape was a permissible means to refresh the witness' recollection.

The trial court did not err in concluding that the Commonwealth was refreshing Franks' memory rather than impeaching her testimony. During her testimony, Franks was unable to recall details from her conversations with police investigators.

> Generally, when a witness has a memory lapse on the stand and "forget[s] some portion (or even all) of the facts of the matter about which [he or she is] called to testify," a party may attempt to "refresh" the witness's memory . . . .

McGann v. Commonwealth, 15 Va. App. 448, 451-52, 424 S.E.2d 706, 709 (1992) (quoting Charles E. Friend, The Law of Evidence in Virginia § 18 (3d ed. 1988)).

### III.   REFRESHING RECOLLECTION

We next consider whether the trial court erred in permitting the Commonwealth to refresh Franks' memory by playing, in the presence of the jury, an audio-taped conversation between Franks and Detective Burt.  Brockenbrough asserts that the trial court committed error by allowing the jury to hear the audiotape used to refresh Franks' memory.  By failing to include either the tape or the contents of the tape in the record on appeal, we are unable to determine whether any error occurred.

Rule 5A:25(c) provides in pertinent part that the contents of the appendix shall include "any testimony and other incidents of the case germane to the question presented," Rule 5A:25(c)(3), and "exhibits necessary for an understanding of the case that can reasonably be reproduced," Rule 5A:25(c)(6). Brockenbrough has an obligation to provide this Court with a proper record for appeal.  Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1185, 409 S.E.2d 16, 20 (1991); see also Thrasher v. Burlage, 219 Va. 1007, 1009-10, 254 S.E.2d 64, 66 (1979) (per curium); Lowery v. Commonwealth, 9 Va. App. 304, 307-08, 387 S.E.2d 508, 509-10 (1990).  He failed to do so.

At trial, the court reporter did not transcribe the contents of the tape into the record pursuant to the trial judge's instructions. However, Brockenbrough did not seek to include for the record a transcript of the tape's content or the tape itself.[4] In addition, at the conclusion of Franks' testimony, the Commonwealth sought to have the tape admitted into evidence. On Brockenbrough's objection, the trial court did not admit it. Again, Brockenbrough did not seek to include the tape or its contents in the record presented to us for review. Without a transcript of the tape's content in the record or the tape itself, we have no basis for determining whether the trial court committed error in permitting the tape to be played. See Jenkins, 12 Va. App. at 1185, 409 S.E.2d at 20.

On our review of the record presented to us, including the testimony of an eyewitness who knew Brockenbrough, and Brockenbrough's inconsistent accounts of his whereabouts at the time of the crime, we conclude that the evidence was clearly

---

[4] At oral argument, Brockenbrough's attorney indicated that he was unaware that the tape had not been transcribed by the court reporter. However, the record does not reflect what efforts, if any, he made to have the tape made a part of the record for our review once he became aware that the transcript did not contain the contents of the tape.

sufficient to sustain the jury's finding of guilt of first-degree murder.

The judgment of the trial court is affirmed.

<u>Affirmed.</u>