UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, AtLee and Senior Judge Clements

JACQUES BEIM

MEMORANDUM OPINION[*]

v.     Record No. 1210-15-3      PER CURIAM
FEBRUARY 16, 2016

ROANOKE COUNTY DEPARTMENT
 OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF ROANOKE COUNTY
Charles N. Dorsey, Judge

(A. Kristin Shandor, on brief), for appellant. Appellant submitting
on brief.

(Peter S. Lubeck, Assistant County Attorney; Marta J. Anderson,
Guardian *ad litem* for the minor children, on brief), for appellee.
Appellee and Guardian *ad litem* submitting on brief.


Jacques Biem (father) appeals the order approving the removal and initial foster care plans

relating to his two children. Father argues that the trial court erred in (1) finding that the children

were abused and neglected and required to remain in foster care because the evidence did not prove

that the children were "subjected to an imminent threat to life or health;" and (2) upholding the

removal and continued foster care because "the evidence did not prove that there were no less

drastic alternatives to removal and foster care." Upon reviewing the record and briefs of the parties,

we conclude that the trial court did not err. Accordingly, we affirm the decision of the trial court.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

In September 2014, father and Robyn Musolff (mother) were living in a hotel room with their two children, who were two years old and four years old, and mother's child, who was nine years old.[1] The Roanoke County Department of Social Services (the Department) received a call regarding the welfare of the children. On September 26, 2014, Robin Freeman, a child protective services worker with the Department, made an unannounced visit to the hotel room. When Freeman arrived, she encountered two of the children. The four-year-old child wore only a t-shirt and a soiled diaper. He did not speak. The nine-year-old child appeared dirty. Freeman asked the older child to get her mother, who was in another hotel room. Mother came to meet Freeman. Mother had the two-year-old child with her. The two-year-old child did not have on any clothes, except for a soiled diaper. Freeman asked mother about the children. Mother told Freeman that she was homeschooling the oldest child, and she diagnosed her four-year-old son with Asperger's Syndrome. Freeman observed the mother and father's hotel room, which was "disorganized" and had a "strong smell of body odor." Father was not present at the time.

After forty-five days and at the end of her assessment, Freeman determined that a child protective order was necessary. Freeman recommended services for the four year old, who could not speak, and the two-year-old child, who appeared to have developmental delays. Mother was uncooperative and refused services. Freeman did not speak with father at that time.

_____

[1] This appeal does not relate to the nine-year-old child because father is not her biological father.

- 2 -

On December 2, 2014, the Roanoke County Juvenile and Domestic Relations District Court (the JDR court) entered preliminary protective orders for the children. The JDR court ordered the parents to cooperate with the Department and obtain psychological and parental capacity evaluations. The JDR court also ordered that the children were to have "eyes-on adult supervision at all times" and "good hygiene and clean clothes."

On December 3, 2014, Angie Wooten, a family services specialist with the Department, met with both parents. She offered numerous service referrals, but mother was not receptive.

On December 19, 2014, the JDR court conducted an adjudicatory hearing on the child protective orders. It entered orders continuing its previous orders and further ordered the parents to apply for Medicaid and obtain physical exams for the children.

On January 22, 2015, the Department received a call regarding the welfare of the children and possible eviction from their hotel room. Wooten confirmed that mother and father owed rent and faced eviction the next day. At approximately 5:30 p.m., Wooten went to the parties' hotel room and spoke with mother. Father was at work. The room was "very cluttered, dirty dishes, dry food, dirty clothes piled in the bathroom, outside the bathroom." The room also had a "very strong odor." Wooten asked mother what her plan was because the current state of the room was unsanitary for the children. Mother was uncooperative. Eventually, mother called her mother, Sandra Sandral, to come to the room. Mother, Wooten, and Sandral made a verbal safety plan. Sandral agreed to take the children to her house for the night, while mother cleaned the room. However, she told Wooten that she could not keep the children more than one night. Wooten did not tell them what time the children had to leave before she left.

At approximately 10:00 p.m., Wooten was called back to the hotel room. Sandral had not yet taken the children to her home. The conditions of the room had not improved. Wooten then took the children into the Department's custody.

When father got off from work, he spoke with the manager about the rent. He agreed to pay the rent the following day when he received his paycheck. Furthermore, mother and father cleaned the hotel room.

On January 26, 2015, the JDR court entered emergency removal orders, and on March 17, 2015, it entered preliminary removal orders and dispositional orders. The JDR court found that the children were abused and neglected and approved the initial foster care plans with the goal of return home. Father appealed the matter to the circuit court.

On June 3, 2015, the parties appeared before the circuit court. After hearing the evidence and argument, the circuit court found that the children were abused and neglected and approved the initial foster care plans. This appeal followed.

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted).

Appellant appeals the circuit court's findings pursuant to Code § 16.1-251(A), which states:

> A child may be taken into immediate custody and placed in shelter care pursuant to an emergency removal order in cases in which the child is alleged to have been abused or neglected. Such order may be issued *ex parte* by the court upon a petition supported by an affidavit or by sworn testimony in person before the judge or intake officer which establishes that:
>
> 1. The child would be subjected to an imminent threat to life or health to the extent that severe or irremediable injury would be likely to result if the child were returned to or left in the custody of his parents, guardian, legal custodian or other person standing in loco parentis pending a final hearing on the petition.
>
> 2. Reasonable efforts have been made to prevent removal of the child from his home and there are no alternatives less drastic than removal of the child from his home which could reasonably

- 4 -

protect the child's life or health pending a final hearing on the petition. The alternatives less drastic than removal may include but not be limited to the provision of medical, educational, psychiatric, psychological, homemaking or other similar services to the child or family or the issuance of a preliminary protective order pursuant to § 16.1-253. . . .

*Assignment of error #1*

Father argues that the circuit court erred in finding that the children were abused and neglected and needed to remain in foster care because the Department failed to prove that the children "would be subjected to an imminent threat to life or health to the extent that severe or irremediable injury would be likely to result if the child were returned to or left in the custody of his parents." Father contends that the condition of the hotel room did not rise to the level that would pose a danger to the children. He notes that Wooten did not provide a deadline for Sandral to take the children to her house and that Wooten left the room prior to ensuring that the children had left.

"[T]he statutory definitions of an abused or neglected child do not require proof of actual harm or impairment having been experienced by the child." Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1183, 409 S.E.2d 16, 19 (1991). See Code § 16.1-228.

> [T]he Code contemplates intervention in such circumstances by allowing for the emergency removal of children before placement into an environment where "the child would be subjected to an imminent threat to life or health to the extent that severe or irreversible injury would be likely to result if the child were returned to or left in the custody of his parent. . . ."

Jenkins, 12 Va. App. at 1183, 409 S.E.2d at 19 (quoting Code § 16.1-251(A)(1)).

The Department first became involved with the family in September 2014, and then obtained child protective orders in December 2014. It offered numerous services, including housing options. The Department discussed the room's cleanliness and the children's hygiene with the parents.

In January 2015, the Department was called back to the hotel room because of allegations that the children were living in filthy conditions. Despite the Department's previous interventions, the parents had not cleaned the room. The Department offered photographs of the room into evidence. Dirty clothes and dishes were in piles throughout the room. Wooten testified that she had to take a sippy cup from one of the young children because the milk in it had spoiled and was solid.

As the trial court noted, Wooten did not give a specific time for Sandral to remove the children from the room, but it was not reasonable for the young children to still be in the room after 10:00 p.m. when Wooten asked Sandral to remove them at 5:30 p.m.

Contrary to father's arguments, the record supports the trial court's findings that the children were abused and neglected because they faced an "imminent threat to life or health" if they remained in father's custody.

*Assignment of error #2*

Father argues that the trial court erred in upholding the removal and continued foster care for the children because the Department did not prove that there was no less drastic alternative. Father asserts that Sandral was going to take the children to her house for the night.[2] During the hearing, father presented photographs that the room was clean and testified that he had paid the rent.

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)).

---

[2] To the extent father's argument challenges the emergency removal pursuant to Code § 16.1-251 or the preliminary removal pursuant to Code § 16.1-252 on the ground that the Department should have let the children go with their grandmother, those decisions of the JDR court were not appealed and, therefore, are not before us.

During the trial, father admitted that the state of the hotel room on January 22, 2015 was "inappropriate" and not "up to par." He also acknowledged that the JDR court previously ordered that the children were to have "eyes-on adult supervision," "good hygiene," and "clean clothes." After the JDR court hearings in December 2014, he knew what was expected of him and mother. However, despite knowing what was expected, the hotel room was unsanitary and filled with dirty clothes and dishes.

The Department offered less drastic alternatives than removal. After the December JDR court hearings, father could have cleaned and maintained the room. However, on January 22, the room was unsanitary and inappropriate for children. On January 22, Wooten agreed to allow Sandral to take the children to her house. However, after approximately five hours, Sandral still had not taken the children to her house.

Based on the record, the trial court did not err in finding that there was no less drastic alternative than removal and subsequent placement in foster care. See Code § 8.01-428(B). To the extent father argues that a less drastic alternative would have been placement with grandmother, the court did not err in declining to so place the children because the mother and grandmother had stated such placement was not an option due to lack of space in the grandmother's home.[3] Although the trial court made the requisite finding that there was "no less drastic alternative," this finding was not included in the dispositional order. We find that this omission was a scrivener's error and remand the case to the circuit court to correct the scrivener's error. Code § 8.01-428(B).

CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed. The case is remanded to the trial court to correct the scrivener's error in the dispositional order.

Affirmed and remanded.

---

[3] The statement was recorded on page two of the foster care service plan.