COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, AtLee and Senior Judge Clements

UNPUBLISHED

SUMMER ROBINSON

MEMORANDUM OPINION*

v.      Record No. 1558-17-4                    PER CURIAM
                                                MARCH 6, 2018

WARREN COUNTY DEPARTMENT OF
 SOCIAL SERVICES


FROM THE CIRCUIT COURT OF WARREN COUNTY
Ronald Lewis Napier, Judge

(David L. Hensley; Gunter Hensley, P.C., on briefs), for appellant.

(Neal T. Knudsen; Elizabeth H. Cooper, Guardian *ad litem* for the
minor children; Vanderpool, Frostick & Nishanian, P.C., on brief),
for appellee.


Summer Robinson (mother) appeals the orders terminating her parental rights to J. and

approving the foster care plan's goal of adoption for I.[1]  Mother argues that the circuit court erred in

finding that the evidence was sufficient (1) "to show by clear and convincing evidence that

[appellant] failed to substantially remedy the conditions that brought [J.] into foster care within the

provision of Virginia Code § 16.1-283;" and (2) "to show by a preponderance of the evidence that

the goal of relative placement should have been changed to adoption with respect to [I.]."  Upon

reviewing the record and briefs of the parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the decision of the circuit court.  See Rule 5A:27.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Since the children are minors, we will refer to them by their initials.

BACKGROUND

"On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 375, 386, 719 S.E.2d 329, 334 (2012) (quoting Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1180, 409 S.E.2d 16, 18 (1991)).

In April 2015, the Warren County Department of Social Services (the Department) first became involved with mother and her two children, J. and I.[2]  The Department received a complaint that mother allegedly smacked J. in his face and left a handprint.  When asked by the child protective services investigator why she struck J., mother responded that J. "had hit her boyfriend John in the face, and she hit [J.] and said, 'How does it feel to be hit in the face?  You don't like it.  So you don't like it, so don't do it."  J. was six years old at the time.

In September 2015, the Department received a complaint about inadequate supervision because I. had walked out of the home and was discovered by a neighbor.  Mother's boyfriend was supposed to be watching the children.  I. was three years old at the time.  The Department offered ongoing services to mother.  The Department was going to provide mother with a parent mentor, but she refused the service.

On November 5, 2015, the Department removed the children from mother's custody after I.'s daycare provider noticed bruises on his body.  Mother admitted to hitting I. with a belt, which caused severe bruising and welts on his body.  She told the Department that I. had been in trouble at his daycare, so she punished him by hitting him with the belt.  A forensic nurse examiner determined that I.'s injuries on his hip, back, ribs, and abdomen were the result of non-accidental injury/trauma.  On November 6, 2015, the Warren County Juvenile and Domestic Relations District Court (the JDR court) entered emergency removal orders.  At the time of the

---

[2] J. and I. have different biological fathers.

removal, I. was three years old, and J. was seven years old. On December 11, 2015, the JDR court determined that I. was an abused and/or neglected child, and J. was at risk for abuse and/or neglect.

The Department's foster care plans required mother to submit to a parental capacity evaluation and follow through with the psychologist's recommendations. Mother cooperated with the parenting capacity evaluation, and Dr. Philip E. Pate completed his report in January 2016. Dr. Pate concluded that mother's "capacity to parent her children is uncertain." He noted that mother denied abusing her child "because she had no intention of harming him, instead only intending to have him obey her for his own good." She rejected "the Department's categorization of the injuries as constituting abuse because she was not angry at the time and did not mean to harm or damage her child;" instead, she "presented the abuse as being thoughtful, careful, and proper discipline for an unruly child." Dr. Pate found that mother had "little insight" and that her cognitive problem-solving skills were "poor." Dr. Pate recommended psychological testing, intellectual testing, a parenting training program, and a parents' group.

Mother subsequently saw Dr. Rachel Spurrier for intellectual testing. Dr. Spurrier recommended that mother participate in psychiatric treatment.

The Department arranged supervised visitations between mother and the children from November 2015 until February 2017. The Department required mother to participate in parent mentoring services, which she started on May 1, 2016. In the report dated September 12, 2016, the specialist noted that mother was making minimal or no progress toward her goals. In the report dated October 5, 2016, the specialist noted that mother continued to deny that she had abused her child and believed that her discipline techniques were appropriate. In the report dated November 3, 2016, the specialist encouraged mother to take additional parenting classes, but mother said that she did not need to. In the report dated January 5, 2017, the specialist noted that

mother's progress on her goals was minimal or non-existent. The specialist testified that in the six months preceding the circuit court trial, mother had progressed by seeing a psychiatrist and taking a parenting class program and a nutrition class.

In November 2016, mother tested positive for marijuana and cocaine. Mother later admitted that she had been using cocaine in November 2016. At the circuit court hearing in September 2017, mother testified that it had been "awhile" since she last used cocaine, and she did not know where she got the money for cocaine. Mother testified that she smoked marijuana to help her "calm down" when she is under stress.

In November 2016, the JDR court entered the permanency planning orders for J. and I. The JDR court approved the goals of adoption of J. and relative placement for I. The Department subsequently filed a petition to terminate mother's parental rights to J.

In December 2016, mother filed a motion to enjoin the Department from moving I. to his paternal grandmother's home in Puerto Rico. The Department planned to move I. to Puerto Rico on December 11, 2016. On December 9, 2016, the JDR court held a hearing on mother's motion. After hearing argument, the JDR court denied the motion. The Department then moved I. to Puerto Rico to live with his paternal grandmother.

On March 9, 2017, the JDR court terminated mother's parental rights to J. and approved a goal of relative placement for I.[3] Mother appealed the decisions to the circuit court.

In May 2017, I.'s paternal grandmother died. The paternal grandmother's sister, I.'s great aunt, expressed an interest in having I. live with her in New York. The Department arranged for a home study through the Interstate Compact for the Placement of Children (ICPC). While the Department awaited the home study and background checks on I.'s great aunt, the Department placed I. in a foster home in Virginia. I.'s great aunt spoke with I. every day, and

---

[3] The JDR court also terminated the parental rights of I.'s father and J.'s father.

she and her husband visited I. In August 2017, the Department placed I. with his paternal great aunt.

On August 10, 2017, the Department filed a motion to amend the foster care plan for I. and asked that the goal be changed to adoption. On August 17, 2017, the circuit court entered an order granting leave to the Department to file appropriate pleadings seeking a change in the foster care plan's goal to adoption.

On September 6, 2017, the parties appeared before the circuit court. Mother admitted that she has five children, the oldest of which is fifteen years old; however, at the time of the hearing, she did not have physical custody of any of the children. Mother acknowledged that at the JDR court hearing, she still believed that she had not abused I. or J. However, at the circuit court hearing, she testified that her discipline of the children was inappropriate. Although psychiatric counseling was recommended for her after her evaluations, she did not start seeing a psychiatrist until June or July of 2017. At the same time, she started weekly parenting classes. Mother testified that as of July 27, 2017, she had a full-time job working nights. She said that if she had custody of the children, then she would switch shifts, and she was exploring daycare options. The Department presented evidence that I. and J. were doing well in their placements. After hearing all of the evidence and argument, the circuit court terminated mother's parental rights to J. pursuant to Code § 16.1-283(C)(2) and approved the goal of adoption for I. This appeal followed.

ANALYSIS

Mother argues that the trial court erred in terminating her parental rights to J. and approving the goal of adoption for I. "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App.

185, 190, 717 S.E.2d 811, 814 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)).  "When considering termination of parental rights, 'the paramount consideration of a trial court is the child's best interests.'"  Id. (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)).

The circuit court terminated mother's parental rights to J. pursuant to Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

The Department presented evidence that mother was unable or unwilling to remedy the conditions that led to the children being placed in foster care.  For the majority of the time that the children were in the Department's custody, mother refused to admit that she had abused them.  After evaluating mother, Dr. Pate expressed concerns about her ability to parent and noted that mother lacked the insight to recognize that she had abused the children and that her actions were inappropriate.  In November 2016, when the children had been in foster care for approximately one year, mother decided to use illegal drugs.  She admitted to using marijuana to cope with her stress.  Mother waited until just a few months before the circuit court hearing to participate in psychiatric counseling and parenting classes.  There was no evidence that she was ready to assume custody of the children.  Furthermore, the Department presented evidence that the children were doing well in their placements.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 322, 746 S.E.2d 509, 522

(2013) (quoting <u>Kaywood v. Halifax Cty. Dep't of Soc. Servs.</u>, 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990)).

Based on the totality of the evidence, the circuit court did not err in terminating mother's parental rights to J. and approving the goal of adoption for I.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed.  Rule 5A:27.

<u>Affirmed.</u>