COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, Chafin and Senior Judge Haley

ANITA SHANA-NICOLE SIMMS

MEMORANDUM OPINION*

v.      Record No. 1852-17-4                    PER CURIAM
                                                APRIL 24, 2018

ALEXANDRIA DEPARTMENT OF COMMUNITY
 AND HUMAN SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
James C. Clark, Judge

(Molly H. Newton; Newton Turner PLLC, on brief), for appellant.
Appellant submitting on brief.

(Matthew W. Greene; James L. Banks, Jr.; Jill A. Schaub; Kevin L.
Wiggs, Guardian *ad litem* for the minor children; Greene Law Group
PLLC; Office of the City Attorney, on brief), for appellee. Appellee
and Guardian *ad litem* submitting on brief.

Anita Shana-Nicole Simms (mother) appeals the orders terminating her parental rights to her

two minor children, T.T. and T.S., and approving the goals of adoption. Mother argues that the

circuit court erred by "admitting into evidence a hearsay document, [mother's] Parental Capacity

Assessment, by relying on Virginia Code § 16.1-245.1, a code section that only applies to

proceedings in the juvenile court." Upon reviewing the record and briefs of the parties, we affirm

the decision of the circuit court.

BACKGROUND

"On appeal, 'we view the evidence and all reasonable inferences in the light most

favorable to the prevailing party below, in this case the Department.'" Farrell v. Warren Cty.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Dep't of Soc. Servs., 59 Va. App. 375, 386, 719 S.E.2d 329, 334 (2012) (quoting Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1180, 409 S.E.2d 16, 18 (1991)).

On May 1, 2003, the Alexandria Juvenile and Domestic Relations District Court (the JDR court) awarded custody of mother's eleven-month-old child, T.T., to the paternal grandmother and maternal great-grandmother. The maternal great-grandmother had physical custody of T.T., and mother had reasonable visitation.

In 2005, mother gave birth to another child, T.S., and a few months later, the maternal great-grandmother filed a petition for custody of T.S. On September 29, 2005, the JDR court awarded temporary custody of T.S. to the maternal great-grandmother and the paternal grandmother.[1] The maternal great-grandmother had physical custody of T.S., and mother had reasonable visitation.

On May 22, 2015, the Alexandria Department of Community and Human Services (the Department) received a complaint alleging physical neglect and inadequate shelter. The Department developed a safety plan with the maternal great-grandmother and provided support to the family in an attempt to prevent the children from being removed from the home.[2] However, because of the maternal great-grandmother's health, age, and inability to care for the children, the Department removed the children on August 11, 2015. The Department initially placed the children with their maternal grandparents. In September 2015, the maternal grandparents moved to Maryland before completing the requirements to be foster care parents, so a home study through the Interstate Compact on the Placement of Children was requested. The Department placed the children in a foster care home in Virginia, while the home study was conducted. The Department

---

[1] On October 19, 2005, the JDR court entered an order stating, "At Petitioner's request, petitions for custody and visitation filed 08/25/05 is [sic] dismissed."

[2] Mother also resided in the home at the time.

determined that the maternal grandparents' home was not a suitable placement for the children because the grandfather had barrier crimes that prohibited placement, and the grandmother had health issues. The Department also was concerned about the grandparents' lack of follow through with the necessary documentation for the home study.

While the children were in foster care, mother was incarcerated for ten and a half months. Mother participated in the Sober Living Unit at the Alexandria Adult Detention Center, and the Department arranged for her to visit with the children at the detention center through May 2016. Upon her release from incarceration, mother visited the children with the maternal great-grandmother.

On May 27, 2016, the circuit court entered adjudicatory orders finding that the children were abused or neglected. The Department remained concerned about mother's extensive history of mental health, substance abuse, anger management, and aggression issues. In August 2016, the Department filed petitions to terminate mother's parental rights to the children and change the foster care goals to adoption. On November 16, 2016, the JDR court entered orders terminating mother's parental rights to the children and approving the goals of adoption. Mother appealed to the circuit court.

On March 17, 2017, the parties appeared before the circuit court.[3] The circuit court took the case under advisement until September 22, 2017, and ordered the Department to provide additional services to mother. As a result of the court's order, the Department offered mother numerous services. The Department worked with mother on housing and provided financial services. The Department referred mother to individual therapy to address her substance abuse issues. Mother attended the first two appointments, but then, did not appear for her other scheduled appointments.

---

[3] The record does not include a transcript or written statement of facts from the March 17, 2017 hearing.

The therapist closed mother's file on July 25, 2017, because more than thirty days had passed with no contact from mother. Beginning in April 2017, the Department attempted to test mother for illegal drugs on six occasions. Mother refused all but one test in June 2017, when she tested positive for PCP.

The Department also provided supervised visits, every other week, with the children. Between March 2017 and September 2017, mother missed five visits and was late to two visits. The visitation supervisor noted that mother's conduct during the visitation was "pretty good," but the supervisor had to intervene at times and redirect mother. The supervisor noted that during the visits, mother "hardly ever" asked the children about school and did not ask the children about their medications.

From March through June 2017, the Department had weekly contact with mother; however, after June 2017, mother did not maintain as regular contact. The social worker explained that mother often became agitated. The social worker noted that most of her contact with mother was by telephone, and mother "would escalate on the phone" and become "belligerent."

On June 22, 2017, the Department sent mother a letter explaining what was required of her for the Department to recommend reunification. The Department expected mother to visit with the children, complete the psychological evaluation/parental fitness evaluation and follow through on all recommendations, cooperate with all drug screens, participate in substance abuse counseling, and keep the Department informed of her housing plans.

The Department referred mother for a psychological evaluation and a parental capacity assessment. Mother complied and participated in the evaluation. The evaluator finalized his report on September 7, 2017 (the September 7, 2017 evaluation). On September 8, 2017, the Department filed a notice indicating that, pursuant to Code § 16.1-245.1, it intended to introduce at trial the September 7, 2017 evaluation.

On September 22, 2017, the parties appeared before the circuit court and presented additional evidence and argument. After introducing testimony from the substance abuse therapist, the Department sought to admit into evidence the September 7, 2017 evaluation. Mother objected to the report because it was not part of the JDR court file and did not fall under Code § 16.1-245.1. The circuit court overruled the objection and admitted the report.

The Department also presented evidence from the social worker who had been working with mother since the March 17, 2017 hearing. The social worker testified that she had not been able to inspect mother's home, but mother previously told her that the children could not live at that residence. Consequently, the Department thought mother's housing situation was a barrier to the children being returned to her custody. However, the most significant problems remained mother's substance abuse and mental health issues. Mother had a "long history of drug abuse," including use of PCP. The social worker explained that mother had not complied with the Department's requirements regarding substance abuse treatment and mental health counseling.

The social worker opined that mother did not have "a lot of insight into her own needs" or the children's needs. Both of the children have special needs. T.S. has "serious medical needs," and T.T. has "a lot of behavioral needs." T.S. has a congenital kidney condition that requires regular medication. While in foster care, T.T. was "unstable[,] . . . leaving school, . . . vandalizing, . . . [and] getting into a lot of trouble." For a period of time, T.T. was in shelter care and then moved to a residential facility. By the September 22, 2017 hearing, T.T. had been returned to the foster home with his brother. The Department expressed doubt about mother's ability to meet the children's basic needs, such as taking them to their appointments.

After hearing the evidence and argument, the circuit court held that it was in the children's best interests to terminate mother's parental rights pursuant to Code § 16.1-283(C)(2). This appeal followed.

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190, 717 S.E.2d 811, 814 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)). "When considering termination of parental rights, 'the paramount consideration of a trial court is the child's best interests.'" Id. (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)).

Mother argues that the circuit court erred in relying on Code § 16.1-245.1 to admit into evidence the September 7, 2017 evaluation. Code § 16.1-245.1 establishes the procedure for the admission of medical evidence in abuse and neglect cases in juvenile and domestic relations district courts. Mother acknowledges that the circuit court could have considered the September 7, 2017 evaluation if it had been part of the JDR court record because it was a *de novo* appeal. However, the Department sought to admit the September 7, 2017 evaluation for the first time in the circuit court. Mother contends that Code § 16.1-245.1 does not apply to child abuse proceedings in the circuit court.

Assuming without deciding that the circuit court erred in admitting the September 7, 2017 evaluation, the error was harmless. An appellate court "will not reverse a trial court for evidentiary errors that were harmless to the ultimate result." Carter v. Commonwealth, 293 Va. 537, 544, 800 S.E.2d 498, 502 (2017) (quoting Shifflett v. Commonwealth, 289 Va. 10, 12, 766 S.E.2d 906, 908 (2015)). "In Virginia, non-constitutional error is harmless '[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" Andrews v. Creacey, 56 Va. App. 606, 625, 696 S.E.2d 218, 227 (2010) (quoting Code § 8.01-678). "If, when all is said and done, [it is clear] that the error did

not influence the [fact finder], or had but slight effect, . . . the judgment should stand . . . ." Id. (quoting Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001)).  An error may be found harmless when "overwhelming expert and other evidence support[s] the court's ultimate holding." Jenkins, 12 Va. App. at 1185-86, 409 S.E.2d at 21.

The Department presented sufficient evidence to terminate mother's parental rights to the children without the admission of the September 7, 2017 evaluation.  The circuit court terminated mother's parental rights pursuant to Code § 16.1-283(C)(2), which states that a court may terminate parental rights if

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

The circuit court did not mention the September 7, 2017 evaluation when it issued its ruling. Instead, the circuit court explained that it had given mother an additional six months from the March 17, 2017 hearing, to "take full advantage of the services that are offered to her [and] to get herself straight . . . ."  The circuit court noted that despite mother's desire to have custody of her children, "there's simply an inability to do that, whether it's emotional problems, mental health problems, certainly substance abuse problems."  The circuit court heard evidence that mother had not complied with the Department's requests in obtaining mental health counseling and substance abuse treatment.  In May 2017, mother attended the first two appointments for substance abuse treatment, but did not appear for any additional appointments.  The therapist testified that two visits were "[a]bsolutely not" enough time to provide substance abuse treatment.  Then, mother tested positive for PCP in June 2017.

In addition to ongoing substance abuse concerns, mother had mental health issues that had not been remedied by the September 22, 2017 hearing. The social worker described mother as "belligerent" and "agitated" as they discussed the case on the telephone. In addition, the social worker testified that mother lacked the insight to meet her own needs, much less her children's needs. Mother lacked the ability to provide basic care, such as taking the children to medical appointments.

Lastly, the Department presented evidence that mother did not have approved housing for the children. Mother told the social worker that the children could not live at the house where she was residing. The social worker had attempted on several occasions to inspect the home, but never had an opportunity to go inside. On June 19, 2017, mother told the social worker that she could not come in the home. On another occasion, the social worker went to the house unannounced, but mother was not home.

Regardless of whether the September 7, 2017 evaluation was admitted, there was sufficient evidence to support the circuit court's decision to terminate mother's parental rights to the children.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.