COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, Chafin and Senior Judge Haley

COREY LEIGH JONES, SR.

v.      Record No. 0334-18-3

CITY OF LYNCHBURG
 DEPARTMENT OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
JULY 24, 2018

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
F. Patrick Yeatts, Judge

(Jordan B. Davies, on brief), for appellant.  Appellant submitting on
brief.

(Susan L. Hartman, Assistant City Attorney; Sarah W. Bell,
Guardian *ad litem* for the minor child; Woods Rogers Edmunds &
Williams, on brief), for appellee.  Appellee and Guardian *ad litem*
submitting on brief.


    Corey Leigh Jones, Sr. (father) appeals an order terminating his parental rights to his child.

Father argues that the circuit court erred in finding that the evidence was sufficient to terminate his

parental rights pursuant to Code § 16.1-283(C)(1) and (C)(2).  Upon reviewing the record and briefs

of the parties, we conclude that the circuit court did not err.  Accordingly, we affirm the decision of

the circuit court.

BACKGROUND

    "On appeal, 'we view the evidence and all reasonable inferences in the light most

favorable to the prevailing party below, in this case the Department.'"  Farrell v. Warren Cty.

Dep't of Soc. Servs., 59 Va. App. 375, 386, 719 S.E.2d 329, 334 (2012) (quoting Jenkins v.

Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1180, 409 S.E.2d 16, 18 (1991)).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Father and Demetria Powell (mother) are the biological parents to the child who is the subject of this appeal. On November 20, 2015, the child was eight years old and entered foster care after the City of Lynchburg Juvenile and Domestic Relations District Court (the JDR court) determined that he was a Child in Need of Services (CHINS). The child had lived with his grandmother, his maternal uncle, and his maternal aunt, but none of them was able to manage the child due to his behaviors. Mother was not active in the child's life. Father appeared at the CHINS hearing and indicated that he wanted custody even though he had not seen the child for one and a half years. The JDR court deferred the placement until a home study could be completed.

In addition to the home study, the Department required father to maintain employment and housing. Father had to participate in a psychological assessment and follow through with the recommendations. The Department also referred father for outpatient counseling, individualized parent coaching, parenting classes, and a substance abuse assessment. Furthermore, father needed to attend all visitations with the child and meetings with the social worker.

On December 1, 2015, father filed petitions for custody and visitation. Initially, father was compliant with some of the Department's requests. He participated in individualized parent coaching and weekly counseling, but then, in June 2016, he stopped attending his sessions. Father resumed counseling in January 2017. When the social worker asked father why he had waited so long to resume counseling, he responded, "I was waiting until the new year so that I could start fresh."

The Department arranged for visits between father and the child. When father attended the visits, the visits went well; however, between January 2016 and July 2016, father missed more than half of his visits. Father's failure to appear at the visitations caused the child to become very upset and aggressive, and then, he would act out in the foster home. On July 21, 2016, the Department suspended the visitations because father had not attended any visitations since May 23, 2016. The

Department scheduled four meetings to talk about visitation with father and the importance of consistent visitation, but father never attended the meetings. The Department finally had a scheduled telephone conference with father in September 2016, and reviewed with him the steps that he needed to take before the first permanency hearing in October 2016. The Department explained that it never resumed visitations because of father's "lack of follow through" and its negative effects on the child, as well as the therapist's recommendations.

In addition to his failure to participate consistently in counseling and visitation, father did not comply with the court-ordered home study. Despite being contacted numerous times by different social workers, father never completed the home study. The Department sent him the necessary paperwork to complete on multiple occasions, but father did not complete the paperwork until May 24, 2016, which was five months after the Department sent him the first packet. The social worker attempted to meet with father several times to follow up on the paperwork and inspect the house, but to no avail. On October 31, 2016, father sent a text message to the social worker and "asked to wait until December of that year due to engagements with his other children that he has in the home." The Department never heard back from father about the home study, even though the social worker tried contacting him several times after receiving the October 31, 2016 text message.

On June 29, 2016, father participated in a psychological and parenting evaluation with Dr. A.J. Anderson. Dr. Anderson found that father's verbal-cognitive abilities tested at a "low average or borderline level." Based on the testing, Dr. Anderson concluded that father had "strong passive drives and dependency needs and require[d] an unusual amount of structure and emotional support to function effectively." Dr. Anderson further opined that father had difficulty tolerating stress and "[h]is tendencies to overreact emotionally and to behave impulsively likely are exacerbated under conditions of increased stress." Dr. Anderson expressed concern that father's "excessive self-focus and his short-run orientation toward pleasure and stimulation may make it

difficult for him to put his children's needs first and to tolerate the kinds of demands that young children often make on a parent's time and energy." With respect to parenting skills, Dr. Anderson found that father had a "spotty ability to handle a variety of hypothetical child-rearing scenarios and sometimes fail[ed] to protect the health, safety, and welfare of children spoken of in the hypotheticals." Dr. Anderson recommended additional counseling and parenting education for father.

On March 20, 2017, the Department filed a petition to terminate father's parental rights. On April 19, 2017, the JDR court entered a permanency planning order approving the goal of adoption and dismissed father's petitions for custody and visitation. The JDR court also terminated father's parental rights.[1] Father appealed to the circuit court.

On September 28, 2017, father did not appear in circuit court for the hearing regarding his appeal of the JDR court's ruling. After receiving a proffer of evidence from the Department, the circuit court terminated father's parental rights pursuant to Code § 16.1-283(C)(1) and (C)(2), but did not enter an order at that time. On October 5, 2017, father filed a motion to reconsider, which the circuit court granted on November 2, 2017. The circuit court rescheduled the matter for a hearing on January 5, 2018.

At that hearing, the Department presented evidence about the child and his well-being. The Department informed the circuit court that in April 2016, the child was hospitalized for disruptive behavior and was diagnosed with attention deficit hyperactivity disorder (ADHD) and oppositional defiant disorder (ODD). He had numerous behavioral issues in the foster home and was "very defiant." In May 2017, the child met with Dr. Emily L. Bradshaw, who determined that the child

---

[1] The JDR court terminated mother's parental rights. Mother appealed to the circuit court, but did not appear at the September 28, 2017 circuit court hearing. After hearing the Department's proffer of evidence, the circuit court terminated mother's parental rights pursuant to Code § 16.1-283(C)(1).

had "symptoms consistent with mild autism." After receiving the diagnosis that the child was on the autism spectrum, the Department arranged for intensive in-home services for the child. At the time of the circuit court hearing, the child was "doing extremely well" in his foster home and at school. His counseling had been reduced from weekly to biweekly, and he no longer needed day treatment at school. The child was living in a possible adoptive placement.

Father testified that he wanted custody of the child. He admitted that there were "a lot of complications" with attending meetings with the social workers and visitations with the child. He explained that part of the difficulty occurred when he started working full-time, which limited his availability. Father also agreed that it "took awhile" to complete the paperwork for the home study because he "just wasn't keeping up with . . . the paperwork and it was just constantly getting lost . . . ." Father stated that he was busy with his other children, so he did not complete the paperwork quickly and did not have time to meet with the social worker for the home study. He explained that he did not contact the social worker or complete any services in the fall of 2016 because he "just wanted to get the holidays out the way."

Father testified that he has eight children, who range in age from eight months to twenty-five years old. Four of the children live with him in his house. Father asserted that the school-age children were doing well in school and that he was active in their lives.

After hearing the evidence and argument, the circuit court held that it was in the best interests of the child to terminate father's parental rights and approved the goal of adoption. On January 26, 2018, the circuit court entered an order terminating father's parental rights pursuant to Code § 16.1-283(C)(1) and (C)(2). This appeal followed.

### ANALYSIS

Father argues that the circuit court erred in finding that the evidence was sufficient to terminate his parental rights pursuant to Code § 16.1-283(C)(1) and (C)(2). "Where, as here, the

court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190, 717 S.E.2d 811, 814 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)). "When considering termination of parental rights, 'the paramount consideration of a trial court is the child's best interests.'" Id. (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)).

Father asserts that the Department did not present clear and convincing evidence that he "could not correct or eliminate the conditions that led to or required continuation of the . . . child's foster care placement." Father emphasizes that he was "raising other successful children" and that he "could adequately raise and care for" the child.

The circuit court terminated father's parental rights pursuant to Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005). "Considerably more 'retrospective in nature,' subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services." Id. (quoting

City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

Recognizing that even though father loved the child, the circuit court found that father's "passivity, . . . inattention, . . . [and] indifference" was not acceptable. The circuit court held that the child was "in need of services today" and that father did not get to wait until it suited his schedule to care for the child and become involved in his life. The child needed stability, especially since he was on the autism spectrum. The circuit court found that father was not "in a position to provide the stability that . . . this child needs and the services he needs aren't going to wait. They're not going to wait for you to be in a position or for it to be the right time of year for you." The circuit court held that the child could not wait for father "to step in and be a parent."

Contrary to father's arguments, the evidence supported the circuit court's findings. Father did not comply with the Department's requirements in order to complete the court-ordered home study. He failed to complete his paperwork in a timely manner and never met with the social worker, despite numerous attempts by the Department to schedule a meeting. When asked why he did not comply with the home study, father said that he lost the paperwork and that he was busy with his other children.

Father also was not compliant with the Department's request that he participate in counseling. He went to a counselor until June 2016, and even though the Department told him that he needed to continue with counseling, father did not do so until January 2017. He explained that there was a delay because "he was waiting for the new year, like a New Year's resolution to make a fresh start."

In addition, father failed to attend most of the scheduled visitations. The Department explained to father that his failure to appear at the visitations had a negative impact on the child.

The social worker asked father to meet with her so that they could discuss the situation and confirm that he was going to be consistent with visitation; however, father missed the scheduled meetings.

At the time of the circuit court hearing, the child had been in foster care for more than two years. The Department presented evidence that the child was doing much better and was in a possible adoptive placement. Meanwhile, father had not complied with the court-ordered home study, and he was not consistent with counseling and visitation. Dr. Anderson opined that based on father's limitations, "it would be more difficult for [father] to take care of any child and even more so a special needs child than the typical individual . . . ." "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 322, 746 S.E.2d 509, 522 (2013) (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990)).

Considering the totality of the circumstances, the circuit court did not err in terminating father's parental rights pursuant to Code § 16.1-283(C)(2).

"When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds." Kilby v. Culpeper Cty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1, 684 S.E.2d 219, 220 n.1 (2009); see also Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Therefore, we will not consider whether the circuit court erred in terminating father's parental rights pursuant to Code § 16.1-283(C)(1).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

<u>Affirmed.</u>