COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Athey and Fulton
Argued at Lexington, Virginia

PARIS C. GRAVES

v.      Record No. 1339-22-3

MEMORANDUM OPINION* BY
JUDGE GLEN A. HUFF
NOVEMBER 8, 2023

ROANOKE CITY DEPARTMENT
  OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
J. Christopher Clemens, Judge

John S. Koehler (Ruth Blaskis; The Law Office of James Steele; The
Law Office of Ruth Blaskis, on brief), for appellant.

Jennifer L. Crook, Assistant City Attorney (Timothy R. Spencer,
City Attorney; Lalita Brim-Poindexter, Guardian ad litem for the
minor child; Poindexter Law, LLC, on brief), for appellee.

Paris C. Graves ("mother") appeals the circuit court's order terminating her parental rights

under Code § 16.1-283(B) and (C)(2). She argues that the circuit court erred in finding the evidence

sufficient to support termination under those statutory sections and in finding that termination was

in the child's best interests. Finding no error, this Court affirms the circuit court's judgment.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

On appeal from a termination of parental rights, this Court "review[s] the evidence in the light most favorable to the party prevailing in the circuit court"—here, the Roanoke City Department of Social Services ("the Department"). *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 550-51 (2018) (quoting *Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 168 (2014)).

Mother is the biological parent of K.G., who is the subject of this appeal.[2]  K.G. was born in August 2020 in North Carolina; mother intentionally delivered K.G. in North Carolina so that the Department could not "take [K.G.] away from her."  Mother has an extensive history with the Department, having been in foster care through the Department herself from age fourteen until she aged out at eighteen.  The Department first became involved with K.G. following a September 15, 2020 report of domestic violence between mother and mother's stepfather, John Blaney ("stepfather").  According to the Department's records there were several previous reports of domestic violence involving mother, she had a history of being "aggressive and impulsive[,]" and had been diagnosed with "Mood Disorder—NOS and Oppositional Defiant Disorder."  In 2016, the Department received a report that mother had left two of her infant children—J.S.G. and Z.G., who were fourteen months and three months old, respectively—home alone for several hours without supervision.  After investigating the report, the Department determined that the "threat of harm [to the children was] consistent with a Level One finding of

---

[1] The record in this case was sealed.  Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues mother has raised.  "To the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case.  The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[2] Mother has five other children who are neither the subject of this appeal nor in her custody.  However, this Court refers to all of mother's children, including K.G., by their initials to protect their privacy.

Physical Neglect—Inadequate Supervision." The City of Roanoke Juvenile and Domestic Relations District Court ("the JDR court") subsequently terminated mother's parental rights to J.S.G., and he was adopted out of foster care. A paternal relative received custody of Z.G.

In 2017, mother gave birth to her third child, J.J.G., and agreed to place J.J.G. with mother's aunt, Sheila Mike, who subsequently received custody. In 2019, the Department again became involved with mother after she gave birth to her fourth child, C.G. Mother signed a safety plan, placing C.G. with Mike. After a domestic violence incident between mother and Mike, the Department obtained an emergency removal order and C.G. entered foster care. The incident resulted in the Department making a finding of Level One Physical Neglect against mother. The JDR court subsequently terminated mother's parental rights to both C.G. and J.J.G.

On September 15, 2020, approximately two months after K.G.'s birth, the police and the Department responded to a domestic violence incident between mother and stepfather. Mother had allegedly spit on stepfather who then told mother to leave his home or he would contact child protective services and "get her baby taken away from her." After mother and K.G. left the home, the Department unsuccessfully attempted to locate them. Two days later, the Department met mother at her workplace. Mother denied that the incident with stepfather had occurred and refused to say where K.G. was located. Mother told the Department that she purposely birthed K.G. out-of-state so that the Department could not find and take K.G. away from her. Based on this incident, the Department made Level One Physical Neglect findings against mother.

On September 18, 2020, three days after the incident with stepfather and the day after the Department went to mother's work, mother brought K.G. to the Department as requested. The JDR court entered emergency and preliminary removal orders and awarded temporary legal custody of K.G. to the Department. The Department placed K.G. with Mike, who still had custody of K.G.'s older half-sibling. The JDR court then adjudicated that K.G. was abused or

neglected, or at risk of being abused or neglected, and subsequently entered a dispositional order, which mother did not appeal.

Given mother's "history with the Department" and the recent involuntary termination of her parental rights to two of her children, the Department did not require mother "to work on any services." The Department's foster care goal was to return K.G. to her putative father's home, not to mother's care. While mother was not required to complete services, the Department provided her options for participating in counseling, undergoing a mental wellness assessment, and obtaining substance abuse treatment at a family partnership meeting. When the Department inquired about mother's current address, she refused to provide it and indicated that she "really didn't have any desire to work with the Department."

Nonetheless, the Department offered mother weekly visitation with K.G. At the first scheduled visit, mother was initially present, but K.G. arrived 30 minutes late, resulting in mother leaving before K.G.'s arrival because she thought the visit was limited to 30 minutes. The Department scheduled another visit approximately six weeks later. When the Department went to pick up K.G., no one was home. The Department attempted to reschedule the visit again, but mother did not return the Department's calls. Accordingly, no visitations occurred between mother and K.G. The Department had no contact with mother for more than one year after K.G. entered foster care.

In November 2021, mother gave birth to her sixth child, M.M. The Department filed a petition for emergency removal because M.M. was born exposed to THC. Following M.M.'s removal, and in contrast to her behavior concerning K.G., mother maintained contact with the Department while M.M. was in foster care. She provided the Department with a copy of her lease and participated in parenting classes. Mother claimed that she also went to her intake appointment with Blue Ridge Behavioral Health. The Department reported that mother was "actively working

the service plan" with respect to M.M. until the JDR court awarded custody of M.M. to a relative. On February 7, 2022, the JDR court terminated mother's parental rights to K.G. Mother appealed that ruling to the circuit court.

At the circuit court hearing, the Department recommended termination of mother's parental rights to K.G., who was two years old at that time. The Department emphasized mother's history with the Department, including the removal and termination of her parental rights to her other children. The Department also stressed mother's lack of cooperation and involvement regarding K.G.'s case. And although mother had maintained contact with the Department regarding her younger child, M.M., she did not ask the Department about K.G. or participate in any visitation with K.G. that the Department had attempted to facilitate.

The Department then presented evidence that K.G. was doing "wonderfully" in her current placement and had developed a "close bond" with her older half-brother in the home. K.G. attended daycare and was "meeting her milestones."

Mother testified about her housing and employment situation. Mother had to move out "temporarily" from her apartment following a grease fire. Consequently, for the two months before the circuit court hearing, mother had been living with the same relative who had custody of M.M. Mother further testified that she had been working at the same job for approximately five months. The Department had not required mother "to do anything," and she admittedly did not maintain "direct contact" with the Department regarding K.G. Despite the lack of visits through the Department, mother had used FaceTime to see K.G. because mother had maintained contact with Mike, with whom K.G. lived. Mother believed that Mike intended to adopt K.G. so mother would be able to see K.G. "any time." On cross-examination, mother admitted that her contact with K.G. had been "really iffy" and the last time she had contacted K.G. on FaceTime was approximately four or five months earlier.

After hearing all the evidence and arguments, the circuit court terminated mother's parental rights under Code § 16.1-283(B) and (C)(2). The circuit court found it was in K.G.'s best interests to terminate mother's parental rights and that the conditions resulting in the prior abuse or neglect are unlikely to be substantially corrected or eliminated, despite reasonable efforts of the Department. Mother appeals.

ANALYSIS

"'On review of a trial court's decision regarding the termination of parental rights, we presume the trial court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests."'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 699 (2022) (quoting *Norfolk Div. of Soc. Servs. v. Hardy*, 42 Va. App. 546, 552 (2004)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011)).

Mother challenges the termination of her parental rights to K.G. under Code § 16.1-283(B) and (C)(2). She contends that the Department provided her with no services and "failed to make reasonable efforts to determine whether the circumstances" surrounding the termination of her parental rights to her other children still existed. In addition, mother alleges that the Department failed to offer "any evidence of an allegation" of abuse or neglect of K.G. She claims that the Department's evidence of the previous termination of her parental rights to

other children was insufficient, standing alone, to support the termination of her parental rights to

K.G. under Code § 16.1-283(B).[3]

Code § 16.1-283(B) permits a court to terminate a parent's parental rights if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and

> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time.  In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

Mother acknowledges that the Department did not have to offer her any services under

Code § 16.1-283(B).  "Subsection B does not create specific time frames, 'nor does it mandate

that a public or private agency provide any services to a parent after the child enters foster care.'"

*Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 269 (2005) (quoting Kate D. O'Leary,

*Termination of Parental Rights in Virginia*, 17 J. Civ. Litig. 17 (2005)).

The JDR court adjudicated K.G. as an abused or neglected child under Code § 16.1-228,

as a child whose parent "creates or inflicts, threatens to create or inflict, or allows to be created

or inflicted upon such child a physical or mental injury by other than accidental means, or creates

a substantial risk of death, disfigurement or impairment of bodily or mental functions."  The JDR

court also adjudicated that K.G. was "at risk of being abused or neglected by a parent or

---

[3] At the beginning of the circuit court hearing, the Department moved to amend its petition requesting the termination of mother's parental rights to add that it was seeking termination under Code § 16.1-283(E)(i), which provides that a parent's parental rights may be terminated "if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that (i) the residual parental rights of the parent regarding a sibling of the child have previously been involuntarily terminated . . . ."  The circuit court denied the Department's motion, finding the Department had failed to provide advance notice to mother of the amendment.

custodian who has been adjudicated as having abused or neglected another child in the care of the parent or custodian." The JDR court subsequently entered a dispositional order, which mother did not appeal.

"[T]he statutory definitions of an abused or neglected child do not require proof of actual harm or impairment having been experienced by the child. The term 'substantial risk' speaks *in futuro . . . .*" *C. Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 416 (2012) (quoting *Jenkins v. Winchester Dep't of Soc. Servs.*, 12 Va. App. 1178, 1183 (1991)). Here, the evidence proved that mother had an extensive history with the Department and that the Department removed K.G. only after a domestic violence incident between mother and stepfather. The Department knew this was not the first incident of domestic violence involving mother. When the Department initiated its investigation, it could not find mother or K.G. And even after the Department located mother, she refused to reveal K.G.'s whereabouts. Mother reported that she intentionally gave birth to the child in North Carolina so that the Department could not "take [K.G.] away from her." It was not until the day after the Department went to mother's work that she finally brought K.G. to the Department's offices. Although K.G. was physically unharmed she was at substantial risk of harm, especially considering mother's history with the Department and with her other children, including previous founded dispositions of abuse and neglect and Level I dispositions for physical neglect.

"Virginia's jurisprudence recognizes that 'past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" *Id.* at 425 (quoting *Winfield v. Urquhart,* 25 Va. App. 688, 695-96 (1997)); *see also Geouge v. Traylor*, 68 Va. App. 343, 375 (2017). "[S]ubsection (B) cases start with the abused or neglected finding and require the trial court to make a judgment about a child's best interest based on that finding." *C. Farrell*, 59 Va. App. at 409.

The record supports the circuit court's finding that it was in K.G.'s best interests to terminate mother's parental rights. The circuit court received evidence that K.G. was removed from mother's care following a report of domestic violence and that the Department was aware of previous incidents of domestic violence involving mother. The circuit court also considered that the Department did not require mother to complete services because of the recent termination of mother's parental rights as to her other children. Moreover, following K.G.'s removal, mother had not contacted the Department for more than one year to inquire about K.G. While mother indicated that she had contacted K.G. with permission of her custodian, she also admitted this contact had been "iffy" and only by FaceTime. Meanwhile, K.G. was doing well in foster care and had developed a bond with her older sibling. The circuit court further considered evidence of mother's strikingly different conduct following M.M.'s removal. She maintained contact with the Department, completed an intake assessment with local mental health services, and provided the Department with updated contact information, all in order to regain custody of M.M. Mother made no similar efforts for K.G. or for any of her other children's previous cases.

At the time of the circuit court hearing, K.G. had been in foster care for approximately two years—almost her entire life. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." *Simms*, 74 Va. App. at 463 (quoting *Harrison v. Tazewell Cnty. Dep't of Soc. Servs.*, 42 Va. App. 149, 162 (2004) (internal quotation omitted)). Based on this record, the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(B).

"When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 574 n.9 (2018); *see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs.*, 46 Va. App. 1, 8 (2005) (the Court affirmed termination of

parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Accordingly, having found that the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(B), this Court need not reach the question of whether mother's parental rights also should have been terminated under Code § 16.1-283(C)(2).

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed*.