COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Fulton, Causey and Raphael
Argued at Lexington, Virginia


KRISTEN BOWES

v.      Record No. 0716-23-3

FRANKLIN COUNTY DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION[*] BY
JUDGE JUNIUS P. FULTON, III
JUNE 4, 2024


FROM THE CIRCUIT COURT OF FRANKLIN COUNTY
James J. Reynolds, Judge

William Edward Cooley for appellant.

(Carolyn H. Furrow; Carolyn H. Furrow, P.C., on brief), for
appellee.

(Patrick Thomas Nix, on brief), Guardian ad litem for the minor
children.  Guardian ad litem submitting on brief.


Kristen Bowes ("mother") appeals the circuit court's order terminating her parental rights to

her minor children, L.P., A.H., and J.H., under Code § 16.1-283(B) and (C)(2).  She asserts that the

circuit court erred in finding the evidence sufficient to support termination under those statutory

sections because she "cured the reasons that caused [her] children to be placed in foster care."

Finding no error, this Court affirms the circuit court's judgment.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

On appeal from a termination of parental rights, this Court "review[s] the evidence in the light most favorable to the party prevailing in the circuit court." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 550-51 (2018) (quoting *Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 168 (2014)). Mother is the biological parent of three children, L.P., A.H., and J.H. On June 11, 2021, the Franklin County Department of Social Services ("DSS") became involved with the family and discovered unsafe conditions in the home. The home was filled with garbage and infested with roaches; moreover, sharp objects and marijuana were within the children's reach. DSS administered drug screens to mother and Lacy Highsmith, father of the two youngest children. Both parents tested positive for marijuana and cocaine.[2]

After a brief placement with a family friend, DSS assumed custody of the children on June 14, 2021. The Franklin County Juvenile and Domestic Relations District Court ("the JDR court") thereafter entered an emergency removal order. The parties stipulated that a preponderance of the evidence established the children were abused or neglected, or at risk of abuse or neglect. The initial goal was to return the children home, and several goals were set for mother's completion by May 2, 2022.

By April 2022 mother had made sufficient progress toward her goals that DSS agreed to a trial placement with her. The children were placed back with mother and Highsmith on April 14, 2022, and DSS visited the home approximately two months later. Mother tested positive for THC,

---

[1] Portions of the record in this case were sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignment of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[2] Highsmith also tested positive for alcohol.

and Highsmith tested positive for THC and alcohol. Mother stated that she continued to use marijuana because it helped her sleep. When Highsmith was informed that he needed to refrain from alcohol use, he retorted that "it was 'bullshit.'" Mother told DSS that Highsmith had been "drinking heavily, every night," and was verbally abusive in the children's presence. She stated that he threatened to kill her if she left him.

On June 16, 2022, DSS informed mother that if she stayed with Highsmith DSS would have to remove the children from the home. Mother agreed that she and the children would have no further contact with Highsmith, and DSS assisted mother in moving to a hotel with the children. She sought a protective order and filed a supporting affidavit alleging that he had assaulted her multiple times and had threatened to kill her if she left him. Mother stated in the affidavit that Highsmith "ha[d] busted out windshields of three different cars, even when [her] children were in the vehicle." Two weeks before the affidavit, Highsmith had dragged mother out of bed by her ankles.

The JDR court limited Highsmith's visitation, ruling that his contact with the children would be at the discretion of DSS. DSS filed a foster care service plan in anticipation of a permanency planning hearing scheduled for August 2022. The goal remained to return the children to mother, with a concurrent goal of relative placement.

Shortly before a September 2022 hearing in the JDR court, the Court Appointed Child Advocate ("CASA") filed a report revealing that mother had resumed living with Highsmith. The report also noted that mother had not enrolled in recommended counseling services for anxiety and depression, rendering her ineligible for other services. Moreover, mother had not held a stable job since the children entered foster care. The CASA voiced concern about whether mother had been honest concerning her job, substance abuse, and relationship with Highsmith. Further, the CASA stressed that the oldest child was "very small" and "frail" "with significant developmental delays"

that likely would require "long-term physical and mental health services." The CASA questioned whether mother would be able to meet the children's needs. Moreover, mother and Highsmith tested positive for marijuana. DSS changed the goal from return home to adoption and relative placement.

On December 21, 2022, the JDR court terminated mother's parental rights to her three children under Code § 16.1-283(B). Mother appealed the ruling to the circuit court. When mother appeared at the circuit court termination hearing on January 30, 2023, L.P. was five years old; A.H. was four years old; and J.H. was two years old. Since the children's removal, mother had lived in eight different places. She had also been incarcerated for two weeks for failing to appear in court.

Mother stated that she and Highsmith had last reunited in September 2022 and had been together since that time. At the time of the hearing, she was four months pregnant. She sought dissolution of the protective order after a few months because she wanted to reunite the family. While mother conceded that Highsmith's violence "scared" her, he was the "love of her life," and she was not prepared to end the relationship. She conceded that Highsmith's drinking "was very bad" and that he had been charged with driving under the influence a year ago; nevertheless, she stressed that he had not been drinking for several weeks before the hearing. Mother also admitted that she continued to smoke marijuana, including during her pregnancy, but claimed she had stopped "[t]wo and a half weeks ago." Mother acknowledged that L.P. and A.H. required occupational and speech therapy and that L.P. suffered from cytomegalovirus, a blood disorder. Mother admitted that she had missed several medical appointments and had been unavailable when J.H.'s daycare tried to reach her.

Mother attributed the termination of the children's trial placement to an unfounded report that she had pushed her oldest child down the stairs, but she conceded that the children had missed appointments. She denied that her marijuana use affected her ability to parent her children because

- 4 -

she "usually" used it after the children were in bed. Despite a history of physical abuse and drug use, mother denied that she needed counseling or that she had benefitted from counseling services provided by DSS. Mother testified that she needed Highsmith and could not raise the children by herself.

Foster care supervisor Jessica Davis was assigned to mother's case from June 2021 to June 2022. During that time, mother consistently tested positive for marijuana. Davis explained that the trial placement with mother ended due to Highsmith's alcohol use, missed appointments, and the family's history of domestic violence. Davis conceded that a preliminary CPS report alleging mother had "shoved a child" down the stairs was unfounded, but based on DSS's other concerns, it had decided not to return the children to mother.

Highsmith admitted that his longest period of sobriety was three and a half months in 2021. He also conceded that he used alcohol and marijuana within a few weeks of the termination hearing.

In closing argument, mother agreed that her relationship with Highsmith posed the "biggest problem" in seeking reunification with her children. She admitted that she had hoped without basis that Highsmith had overcome his drinking problem. Nevertheless, she stressed that she wanted to provide her own children with a nuclear family and that she and Highsmith had recently been "doing what they need to do" to reunite the family. Although she agreed that she and Highsmith had used marijuana, she understood that she needed to "change" that because she was pregnant. DSS responded that the children had been in its custody for 19 months and that mother had acknowledged she could not raise them alone.

The circuit court terminated mother's parental rights under Code § 16.1-283(B) and (C)(2). It found that mother was unwilling to give up her relationship with Highsmith, prioritizing that relationship over her children's needs. It stressed that remaining in the foster care system for a lengthy period of time was not in the children's best interests and that mother and Highsmith had

- 5 -

waited until the eve of the hearing to recognize that their drug and alcohol use "d[id] not promote better parenting." This appeal follows.

ANALYSIS

"On review of a trial court's decision regarding the termination of parental rights, we presume the trial court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 699 (2022) (quoting *Norfolk Div. of Soc. Servs. v. Hardy*, 42 Va. App. 546, 552 (2004)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011)).

Mother argues that, by virtue of the trial placement, DSS conceded she could provide an appropriate and safe environment for the children on April 22, 2022, only ten months after their removal. She contends that the children were thereafter removed based on "an unfounded report that [mother] shoved a child down a stairway." Mother emphasizes that, up until the second removal, she had provided the children a safe place to live, was employed, and was caring for them. She asserts that the second removal was "unfair" because it was based on an unfounded report of abuse.

Code § 16.1-283(B) states in pertinent part:

> The residual parental rights of a parent . . . of a child found by the court to be neglected or abused and placed in foster care as a result of (i) court commitment . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:
>
> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and

- 6 -

2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

"[S]ubsection (B) cases start with the abused or neglected finding and require the trial court to make a judgment about a child's best interest based on that finding." *Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 409 (2012). "[T]he statutory definitions of an abused or neglected child do not require proof of actual harm or impairment having been experienced by the child. The term 'substantial risk' speaks *in futuro* . . . ." *Id.* at 416 (quoting *Jenkins v. Winchester Dep't of Soc. Servs.*, 12 Va. App. 1178, 1183 (1991)). "Virginia's jurisprudence recognizes that 'past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" *Id.* at 425 (quoting *Winfield v. Urquhart*, 25 Va. App. 688, 695-96 (1997)); *see also Geouge v. Traylor*, 68 Va. App. 343, 375 (2017).

Here, mother does not assert that DSS failed to provide her services, and the record supports the circuit court's finding that it was in the children's best interests to terminate mother's parental rights.[3] The evidence demonstrated that DSS removed the children after they were found living in squalid and dangerous conditions and both parents tested positive for drugs. Although DSS attempted to return the children to mother on a trial basis, neither mother nor Highsmith stopped their drug and alcohol use. Moreover, the children were not only exposed to Highsmith's threats of violence against mother but witnessed acts of violence. Despite the continued threat of violence, mother refused to leave Highsmith because she wanted to keep the family together. She continued

---

[3] The record indicates that DSS assisted mother in purchasing a car, cleaning up her residence, providing her the funds for a deposit on a new residence, helping her with her utility bill, and paying for a hotel room so that she could leave Highsmith in the summer of 2022. DSS also offered mother parenting and counseling services.

to reside with Highsmith while he was drinking and persisted in her marijuana use, placing her children and her unborn child at risk. Mother stated that she was unwilling to terminate her relationship with Highsmith, despite his violent history and the fact that his longest stint of sobriety was only three and a half months. Mother conceded that she had missed appointments for the children, but her justification for doing so was that she could not manage their extensive needs on her own. Two of the three children had special needs and required occupational and speech services. Indeed, the record establishes that the above circumstances, not merely "an unfounded report of abuse," caused DSS to remove the children from mother's custody after the trial placement.

At the time of the termination hearing, the children had been in foster care for approximately 19 months. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." *Simms*, 74 Va. App. at 463 (quoting *Harrison v. Tazewell Cnty. Dep't of Soc. Servs.*, 42 Va. App. 149, 162 (2004) (internal quotation omitted)). Based on this record, the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(B).

"When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 574 n.9 (2018); *see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs.*, 46 Va. App. 1, 8 (2005) (affirming termination of parental rights under one subsection of Code § 16.1-283 without addressing sufficiency of evidence supporting termination under another subsection). Accordingly, having found that the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(B), this Court need not reach the

question of whether the circuit court erred by terminating mother's parental rights under Code § 16.1-283(C)(2).[4]

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*

---

[4] Under Code § 16.1-283(C)(2), the residual parental rights of a parent of a child placed in foster care may be terminated if the parent, without good cause, has been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement.